**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David Allen Leary, | No. CV-18-01633-PHX-JGZ (EJM) |
| Petitioner, | **ORDER** |
| v. | |
| David Shinn, et al., | |
| Respondents. | |

Petitioner David Allen Leary has filed an amended Petition for a Writ of Habeas Corpus ("PWHC" or "Petition") pursuant to 28 U.S.C. § 2254. Before this Court are the Petition (Doc. 9), Respondents' Answer (Doc. 37), and Petitioner's Reply (Doc. 38). The Court will deny the Petition.

## I.    FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.  Trial, Sentencing, and Appeal

A Maricopa County Superior Court jury found Petitioner guilty of conspiracy, sale or transportation for sale of marijuana, and possession of a narcotic drug for sale. (Ex. AA.)[2] Petitioner was sentenced to concurrent prison terms totaling 9.25 years. *Id.*

Following his conviction, Petitioner sought relief in the Arizona Court of Appeals

---

[1] Respondents provided voluminous excerpts of Petitioner's state court record in support of their Answer. The Court has reviewed all briefs and exhibits submitted by the parties. In order to efficiently review the claims at issue in the Petition, the Court provides a summary of the state court proceedings in this background section. In evaluating whether Petitioner's claims are exhausted, and in evaluating the merits of the exhausted claims, the Court provides a more detailed review of the state court proceedings specific to each claim.

[2] All exhibit numbers refer to Respondent's Answer, Doc. 37, unless otherwise noted.

("COA"). Appointed counsel filed a brief presenting four issues for review: (1) the State re-indicted Petitioner because it could not try his case within the time limits proscribed by Rule 8 and because he chose to exercise his constitutional right to a trial, the latter reason requiring a dismissal for prosecutorial vindictiveness; (2) the trial court abused its discretion by failing to sever the sale/ transportation of marijuana charge from the conspiracy charges; (3) the trial court abused its discretion by allowing the officers to interpret the wiretap calls, impermissibly invading the province of the jury; and (4) the court abused its discretion by not conducting a proper hearing to determine whether there was juror misconduct, depriving Petitioner of a fair trial. (Ex. BB.)

On May 24, 2016, the COA issued its decision affirming Petitioner's convictions and sentences. (Ex. EE.) The court addressed each of Petitioner's claims in detail but found no error. *Id.*

Petitioner filed a petition for review with the Arizona Supreme Court (Ex. FF), which the court denied on October 25, 2016. (Ex. GG.)

**B. First Petition for Post-Conviction Relief**

On June 15, 2016, Petitioner initiated proceedings in Maricopa County Superior Court for Rule 32 post-conviction relief ("PCR"). (Ex. HH.) Appointed counsel filed a notice of completion stating that she was unable to find a colorable claim for relief and requesting additional time for Petitioner to file a pro se petition. (Ex. II.) Petitioner filed a pro se petition presenting nineteen claims for relief: (1) denial of *Franks*[3] hearing; (2) DEA Agent Brett Paterson's use of sting ray device, GPS tracking device, pen register trap trace device, "prewire" without warrants; (3) assistant prosecutor Liz Barrack helped cops and affiants draft wiretap affidavit; (4) denial of peremptory challenges and the right to a jury of Petitioner's choosing; (5) denial of mistrial based on admission of tape recordings; (6) improper admission of cocaine evidence; (7) trial judge's closure of the courtroom; (8) cumulative errors; (9) exclusion of African Americans from the jury panel; (10) violation of the exclusion of witness rule; (11) admission of medical marijuana seized from

---

[3] *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978)

- 2 -

Petitioner's home; (12) trial court's failure to rule on vindictive prosecution motion requesting oral argument; (13) prosecutorial misconduct, malicious prosecution, coerced testimony by informant, leading to second grand jury indictment, false imprisonment, vindictive prosecution; (14) ineffective assistance of trial counsel; (15) ineffective assistance of appellate counsel; (16) ineffective assistance of PCR counsel; (17) "counsel was denied the right to discuss forfeiture action by the State"; (18) denial of Petitioner's motion to recuse sentencing judge; and (19) denial of Petitioner's motion to change judge for cause. (Ex. JJ.)

On May 8, 2017 the trial court issued its order summarily dismissing the petition pursuant to Rule 32.6(c). (Ex. KK.) The court found that Petitioner's claims 1, 7, and 12 were not within the scope of Rule 32; claims 2, 3, 4, 5, 6, 8, 9, 10, 11, and 13 were not raised on appeal and were therefore precluded pursuant to Rule 32.2(a)(3); and that the remaining IAC claims were without merit.

Petitioner filed a petition for review in the Arizona COA reasserting the same claims (Ex. LL), and on April 6, 2018, the COA issued its order granting review but denying relief. (Ex. MM.)

### C. Second Petition for Post-Conviction Relief

On January 8, 2018, Petitioner filed a second notice of PCR in Maricopa County Superior Court alleging that he was entitled to relief based on the existence of newly discovered material facts, a significant change in the law, and facts that established by clear and convincing evidence that Petitioner was actually innocent. (Ex. NN.) Petitioner filed a pro se petition arguing evidence of a false phone call used to obtain his conviction and a change in the law concerning wiretap procedures. (Ex. OO.)

On November 5, 2018, the trial court issued its order finding that Petitioner failed to show any colorable claim for post-conviction relief under Rule 32.1(e) or Rule 32.1(g) and dismissed the petition. (Ex. PP.)

Petitioner filed a petition for review in the Arizona COA arguing his claim of the allegedly false phone call and conceding his argument on the wiretap issue. (Ex. QQ.) On

May 7, 2019, the COA issued its order granting review but denying relief. (Ex. RR.)

Petitioner did not file a motion for reconsideration or a petition for review to the Arizona Supreme Court. On June 14, 2019, the COA issued its mandate. (Ex. SS.)

**D. Habeas Petition**

On August 24, 2018, Petitioner filed the pending Petition. (Doc. 9.) Petitioner alleges twenty-three grounds for relief:

(1)   Petitioner was denied a speedy trial and "prosecutorial vindictiveness," in violation of the Fourth, Sixth, and Fourteenth Amendments;

(2)   The trial court abused its discretion when it failed to sever the marijuana and conspiracy charges, in violation of the Sixth and Fourteenth Amendments;

(3)   The trial court abused its discretion when it allowed officers "to interpret wiretap calls, invading province of jury," in violation of the Fifth, Sixth, and Fourteenth Amendments;

(4)   The trial court abused its discretion when it did not conduct a hearing on jury misconduct, in violation of the Fifth, Sixth, and Fourteenth Amendments;

(5)   Petitioner's Fourteenth Amendment right to a fair trial was violated when he was denied a change of judge;

(6)   Petitioner's Fourth and Fourteenth Amendment rights were violated when the trial court denied Petitioner's request for a *Franks* hearing and motion to suppress the wiretap;

(7)   Petitioner's Fourth and Fourteenth Amendment rights were violated when "D.E.A. Agent Patersons, use[d a] sting ray device, GPS tracking devices, Pen Register, trap trace device 'peewire' without prior court authorization, supervision, nor approval";

(8)   Petitioner's Fourth Amendment rights were violated when the prosecutor erred by assisting "affiants in the authoring of wire taps affidavit therefore, committing a neutral and detachment violation";

(9)   Petitioner's Sixth and Fourteenth Amendment rights were violated when he was denied peremptory challenges during jury selection;

(10)   Petitioner's Sixth and Fourteenth Amendment rights were violated when he was denied a mistrial "based on admission of taped recordings of non- defendants";

(11)   Petitioner's Fourteenth Amendment rights were violated when evidence of cocaine not related to Petitioner was admitted into evidence;

(12)   Petitioner's First, Sixth, and Fourteenth Amendment rights were violated when the courtroom was closed for six to nine months;

(13)   Petitioner's Fourteenth Amendment right to a fair and impartial trial was violated by cumulative errors;

(14)   Petitioner's Sixth and Fourteenth Amendment rights were violated because the jury was devoid of African American jurors;

(15)   Petitioner's Sixth and Fourteenth Amendment rights were violated when the trial court failed to exclude witnesses from the courtroom during his trial;

(16)   Petitioner's Sixth and Fourteenth Amendment rights were violated when the trial court erred by admitting Petitioner's medical marijuana as evidence when it was clearly authorized for personal use;

(17)   Petitioner's Fourth and Fourteenth Amendment rights were violated when the trial court failed to rule on Petitioner's vindictive prosecution motion;

(18)   Petitioner's Fourteenth Amendment rights were violated by "prosecutorial misconduct, malicious prosecution, [and] vindictive prosecution, resulting in frivolous (2nd) indictment";

(19)   Petitioner received ineffective assistance of trial counsel, in violation of the Sixth and Fourteenth Amendments;

(20)   Petitioner received ineffective assistance of appellate counsel, in violation of the Sixth, Fourth, and Fourteenth Amendments;

(21)   Petitioner's Sixth and Fourteenth Amendment rights were violated when the forfeiture argument was prohibited during trial;

(22)   Petitioner's Fourth and Fourteenth Amendment rights were violated when his motion for recusal of sentencing judge was denied; and

(23)   Petitioner's Fourth and Fourteenth Amendment rights were violated when he was denied a change of judge for cause at sentencing.

Respondents argue that all of Petitioner's claims are either procedurally defaulted without excuse, not cognizable on habeas review, or without merit. (Doc. 37.)

The Court finds that Petitioner's claims in Grounds 6, 7, 8, and 21 are not cognizable on federal habeas review. The Court further finds that Petitioner's claims in Grounds 1(a),

2, 3, 4, 5, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 20(a) and (c), 22, and 23 are procedurally defaulted and barred from this Court's review, and Petitioner does not demonstrate cause and prejudice or a fundamental miscarriage of justice to excuse the procedural default of his claims. Finally, as to the merits of Grounds 1(b), 19(a), (b), and (c), and 20(b), (d), and (e), the Court finds that Petitioner has failed to show that the state court's decision was contrary to federal law, based on an unreasonable application of such law, or based on an unreasonable determination of the facts. Accordingly, the Court will deny the Petition.

## II.    STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") limits the federal court's power to grant a petition for a writ of habeas corpus on behalf of a state prisoner. First, a federal court may only consider petitions alleging that a person is in state custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Second, sections 2254(b) and (c) provide that the federal courts may not grant habeas corpus relief, with some exceptions, unless the petitioner exhausted state remedies. Additionally, if the petition includes a claim that was adjudicated on the merits in state court proceedings, federal court review is limited by § 2254(d).

## III.   ANALYSIS[4]

### A. Non-cognizable Claims

Habeas is not the remedy for every legal error—federal habeas relief is only available to state prisoners to correct violations of the United States Constitution, federal laws, or treaties of the United States. 28 U.S.C. § 2254(a). Habeas petitioners must plead

---

[4] As a threshold matter, the Court must consider whether a PWHC is barred by the statute of limitations. *See White v. Klizkie*, 281 F.3d 920, 921–22 (9th Cir. 2002). AEDPA imposes a one-year statute of limitations for state prisoners filing federal habeas petitions. 28 U.S.C. § 2244(d)(1). Here, Respondents do not dispute that the PWHC was timely filed. The Court finds that the PWHC was timely filed within one year from the date that the Arizona COA issued its mandate on Petitioner's second PCR proceedings—the mandate issued on June 14, 2019 and Petitioner timely filed his PWHC on May 25, 2018. *See Wells v. Ryan*, 2015 WL 9918159, at *8–*9 (D. Ariz. Aug. 13, 2015) ("[W]hen the Arizona Court of Appeals grants review of the trial court's decision on a petition for post-conviction relief but denies relief, and the petitioner does not seek further review, the post-conviction proceeding is pending until the date the appellate court issues its mandate.") (collecting cases and citing Ariz. R. Crim. P. 31.23 and 32.9(g)), *report and recommendation adopted by* 2016 WL 319529 (D. Ariz. Jan. 27, 2016); *Ramon v. Ryan*, 2010 WL 3564819, *6 (D. Ariz. July 23, 2010) (same).

their claims with particularity and must specify all grounds for relief and the facts supporting those grounds. Rule 2(c), Rules Governing § 2254 cases; *Mayle v. Felix*, 545 U.S. 644, 656 (2005).

"[I]it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("federal habeas corpus relief does not lie for errors of state law"). Further, this Court presumes that the state court properly applied the law, *see, e.g.*, *Holland v. Jackson*, 542 U.S. 649, 655 (2004); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (state court decisions must "be given the benefit of the doubt"), and gives deference to the trier of fact. *Wright v. West*, 505 U.S. 277, 296 (1992); *Sumner v. Mata*, 455 U.S. 591 (1982).

A petitioner cannot transform his state law claims into federal ones merely by asserting a violation of due process. *Rivera v. Illinois*, 556 U.S. 148, 158 (2009) ("'A mere error of state law . . . is not a denial of due process.'" (quoting *Engle*, 456 U.S. at 121 n.21)); *see also Poland v. Stewart*, 169 F.3d 573, 584 (9th Cir. 1999); *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996). Relatedly, a petitioner cannot recast his state law claim as a federal constitutional challenge to the sufficiency of the evidence. *Curtis v. Montgomery*, 552 F.3d 578, 582 (7th Cir. 2009). However, violations of state law are cognizable on habeas if the state court's application of state law was so arbitrary or capricious as to constitute an independent due process violation that rendered the trial fundamentally unfair. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Lyons v. Brady*, 666 F.3d 51, 55–56 (1st Cir. 2012).

### 1. Fourth Amendment Claims

"[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 494 (1976). "The relevant inquiry is whether petitioner had the opportunity to litigate his claim, not whether he did in fact do so or even whether the claim was correctly decided." *Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 899 (9th

1   Cir. 1996). "In [the habeas] context the contribution of the exclusionary rule, if any, to the

2   effectuation of the Fourth Amendment is minimal, and the substantial societal costs of

3   application of the rule persist with special force." *Stone*, 428 U.S. at 494–95.

4                 a.  Ground 6

5        Petitioner asserts a violation of his Fourth and Fourteenth Amendment rights based

6   on the trial court's denial of a *Franks* hearing and motion to suppress wiretap. (Doc. 9 at

7   36; Doc. 38 at 23–26). Petitioner had the opportunity to litigate this claim in the state courts

8   and is not entitled to further review on habeas.

9        On December 20, 2012, the trial court denied defendants'[5] original request for a

10  *Franks* hearing.[6] (Ex. GGG.) On October 3, 2013 Petitioner filed his motion to suppress

11  wiretap evidence asserting that the affidavit submitted in support of the original wiretap

12  application for codefendant David Mosley failed to establish probable cause and

13  misrepresented or omitted significant facts relevant to a probable cause determination. (Ex.

14  EEE.) Petitioner also sought a *Franks* hearing to permit "the defense to further develop the

15  recklessness of the agents in their failure to provide a full and complete statement of their

16  investigation." (*Id.* at 52.) On December 13, 2013, the trial court heard oral argument on

17  the motion. (Ex. B at 43–52; *see also* Ex. DDD.) On January 17, 2014, the trial court denied

18  Petitioner's motion to suppress the wiretap finding the issues had been "raised in the

19  CR2011-150285 matter and denied by the Honorable Peter Reinstein." (Ex. DDD at 2.)

20       On May 2, 2017, Petitioner filed his first PCR petition and urged that the trial court

21  applied the wrong standard of review in its denial of a *Franks* hearing. (Ex. JJ at 2–5.) On

22  May 8, 2017, the Rule 32 court found that this allegation was not within the scope of Rule

23  32 because it involved pretrial rulings from the dismissed 2011 indictment. (Ex. KK.) The

24  Rule 32 court summarily dismissed Petitioner's petition, *id.*, and the Arizona COA granted

25  review but denied relief (Ex. MM.) The appellate court observed that Petitioner failed to

---

[5] Defendant Mosley filed a Motion to Suppress Wiretaps, in which Defendants Armstrong, Leary, Miller Sr., Tolliver, Montgomery, Jack, and Shaw joined.

[6] Defendants were originally indicted in 2011, but that case was dismissed by the State. (Ex. TT; *see also* Ex. B at 10–42.) The prosecutor then convened another grand jury which reindicted defendants in April 2013. (Exs A & B.)

develop how the denial of a *Franks* hearing was of sufficient constitutional magnitude to prevent preclusion and therefore declined to address the issue. *Id.*

On June 13, 2018, Petitioner filed a second PCR petition alleging newly discovered evidence of an alleged false telephone call, as well as a substantial change in the law implicating Maricopa County's wiretap procedures. (Ex. OO.) The Rule 32 court found that Petitioner failed to demonstrate a claim of newly discovered evidence and that even if there was a substantial change in the law, the ruling was not retroactive to Petitioner's case, and therefore dismissed the petition. (Ex. PP.) The Arizona COA granted review and denied relief, concluding that Petitioner had failed to establish that the lower court had abused its discretion. (Ex. RR.)

Petitioner fully and fairly litigated this claim. Petitioner presented argument regarding suppression of the wiretap evidence and a *Franks* hearing regarding the same to the state trial and appellate courts. Not only did he raise these issues pre-trial, but also in two rounds of post-conviction proceedings. Accordingly, the Court finds Ground 6 is not cognizable for habeas review.

### b.  Ground 7

Petitioner asserts a violation of his Fourth and Fourteenth Amendment rights when "D.E.A. Agent Patersons, use[d] [a] sting ray device, GPS tracking devices, Pen Register, trap trace device 'peewire' without prior court authorization, supervision, nor approval." (Doc. 9 at 40; Doc. 38 at 23–26.) Petitioner had the opportunity to litigate this claim in the state courts and is not entitled to further review here.

In his first PCR petition, Petitioner argued that DEA Agent Patterson utilized tracking devices without proper authorization. (Ex. JJ at 6.) The Rule 32 court found that Petitioner had failed to raise this issue on direct appeal and it was therefore precluded pursuant to Rule 32.2(a)(3), Arizona Rules of Criminal Procedure. (Ex. KK.) In granting review and denying relief, the appellate court observed that Petitioner did not present any compelling argument regarding the preclusion of this claim. (Ex. MM.)

In his second PCR petition, Petitioner alleged that Agent Patterson was using tracking devices without a warrant or court supervision. (Ex. OO.) The Rule 32 court found that Petitioner failed to demonstrate a claim of newly discovered evidence and that even if there was a substantial change in the law, the ruling was not retroactive to Petitioner's case. (Ex. PP.) The court concluded Petitioner "ha[d] failed to show any colorable claim for post-conviction relief" and dismissed Petitioner's petition. *Id.* at 2. The Arizona COA granted review but denied relief, concluding Petitioner had failed to establish that the lower court had abused its discretion. (Ex. RR.)

Petitioner has presented his argument regarding Agent Patterson's use of tracking devices in violation of the Fourth Amendment to the state trial and appellate courts. Petitioner fully and fairly litigated this claim. Accordingly, the Court finds Ground 7 is not cognizable for habeas review.

### c.   Ground 8

Petitioner asserts a violation of his Fourth and Fourteenth Amendment rights when the prosecutor erred by assisting "affiants in the authoring of wire taps affidavit therefore, committing a neutral and detachment violation." (Doc. 9 at 44; Doc. 38 at 27.) Petitioner had the opportunity to litigate this claim in the state courts and is not entitled to further review here.

In his first PCR petition, Petitioner asserted that Assistant Attorney General Barrack "helped cops, affiants draft wiretap affidavit" allegedly in violation of a neutral and detachment requirement of the Fourth Amendment. (Ex. JJ at 7.) The Rule 32 court found that Petitioner had failed to raise this issue on direct appeal and it was therefore precluded pursuant to Rule 32.2(a)(3). (Ex. KK.) In granting review and denying relief, the appellate court observed that Petitioner did not present any compelling argument regarding the preclusion of this claim. (Ex. MM.)

Because Petitioner has presented his argument to the state trial and appellate courts, he has fully and fairly litigated this claim. Accordingly, the Court finds Ground 8 is not cognizable for habeas review.

1        2.  <u>State Law Claim</u>

2        Ground 21 alleges a violation of Petitioner's due process rights arising from the trial

3   court's preclusion of evidence regarding a civil forfeiture action for items seized from

4   Petitioner's home. (Doc. 9 at 69; Doc. 38 at 50–52.) During trial, the State filed a motion

5   *in limine* to preclude "information pertaining to the forfeiture matter as well as the

6   information pertaining to the civil lawsuit regarding the damage to Mr. Leary's house

7   [because it] ha[d] zero relevance as to whether or not Mr. Leary was a participant in a

8   conspiracy involving narcotic drugs, whether or not he possessed narcotic drugs for the

9   purposes of selling them, or whether or not he was engaged in selling marijuana." (Ex. I at

10  35.) Defense counsel countered that because the State returned all of Mr. Leary's property

11  to him, the forfeiture proceedings were relevant to impeach the officer who authored the

12  warrant. *Id.* at 35–38. The trial court determined that the forfeiture action was not relevant

13  and observed that defense counsel would have the opportunity to cross-examine the officer

14  regarding the import to the criminal proceeding of any items seized as a result of the search

15  warrant. *Id.* at 38–39.

16       Ground 21 seeks reversal of an evidentiary ruling based on state law. "[I]t is not the

17  province of a federal habeas court to reexamine state-court determinations on state-law

18  questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). "[A] federal court is limited to

19  deciding whether a conviction violated the Constitution, laws or treaties of the United

20  States." *Id.* at 68. As such, "evidentiary rulings based on state law cannot form an

21  independent basis for habeas relief." *Rhoades v. Henry*, 638 F.3d 1027, 1034 n.5 (9th Cir.

22  2011). Petitioner may not "transform a state-law issue into a federal one merely by

23  asserting a violation of due process." *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996).

24  Accordingly, the Court finds Ground 21 not cognizable for habeas review.

25  **B.  Unexhausted and Procedurally Defaulted Claims**

26       A state prisoner must exhaust his state remedies before petitioning for a writ of

27  habeas corpus in federal court. 28 U.S.C. § 2254(b)(1) & (c); *O'Sullivan v. Boerckel*, 526

28  U.S. 838, 842 (1999). To exhaust state remedies, a petitioner must afford the state courts

the opportunity to rule upon the merits of his federal claims by fairly presenting them to the state's highest court in a procedurally appropriate manner. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) ("To provide the State with the necessary opportunity, the prisoner must fairly present her claim in each appropriate state court . . . thereby alerting the court to the federal nature of the claim."). A claim is fairly presented if the petitioner describes both the operative facts and the federal legal theory upon which the claim is based. *Kelly v. Small*, 315 F.3d 1063, 1066 (9th Cir. 2003), *overruled on other grounds by Robbins v. Carey*, 481 F.3d 1143 (9th Cir. 2007). In Arizona, unless a prisoner has been sentenced to death, the highest court requirement is satisfied if the petitioner has presented his federal claim to the Arizona COA, either through the direct appeal process or post-conviction proceedings. *Crowell v. Knowles*, 483 F. Supp. 2d 925, 931–33 (D. Ariz. 2007).

"A habeas petitioner who [fails to properly exhaust] his federal claims in state court meets the technical requirements for exhaustion" if there are no state remedies still available to the petitioner. *Coleman v. Thompson*, 501 U.S. 722, 732 (1991). "This is often referred to as 'technical' exhaustion because although the claim was not actually exhausted in state court, the petitioner no longer has an available state remedy." *Thomas v. Schriro*, 2009 WL 775417, at *4 (D. Ariz. March 23, 2009). "If no state remedies are currently available, a claim is technically exhausted," but, as discussed below, the claim is procedurally defaulted and is only subject to federal habeas review in a narrow set of circumstances. *Garcia v. Ryan*, 2013 WL 4714370, at *8 (D. Ariz. Aug. 29, 2013).

If a petitioner fails to fairly present his claim to the state courts in a procedurally appropriate manner, the claim is procedurally defaulted and generally barred from federal habeas review. *Ylst v. Nunnemaker*, 501 U.S. 797, 802–05 (1991). There are two categories of procedural default. First, a claim may be procedurally defaulted in federal court if it was actually raised in state court but found by that court to be defaulted on state procedural grounds. *Coleman*, 501 U.S. at 729–30. Second, the claim may be procedurally defaulted if the petitioner failed to present the claim in a necessary state court and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion

requirement would now find the claims procedurally barred." *Id.* at 735 n.1; *O'Sullivan*, 526 U.S. at 848 (when time for filing state court petition has expired, petitioner's failure to timely present claims to state court results in a procedural default of those claims); *Smith v. Baldwin*, 510 F.3d 1127, 1138 (9th Cir. 2007) (failure to exhaust claims in state court resulted in procedural default of claims for federal habeas purposes when state's rules for filing petition for post-conviction relief barred petitioner from returning to state court to exhaust his claims).

### 1.   Grounds Presented to State Court Solely as Violations of State Law

The fair presentation requirement mandates that a state prisoner must alert the state court "to the presence of a federal claim" in his petition; simply labeling a claim "federal" or expecting the state court to read beyond the four corners of the petition is insufficient. *Baldwin*, 541 U.S. at 31–33. The petitioner must have "characterized the claims he raised in state proceedings *specifically* as federal claims." *Lyons v. Crawford*, 232 F.3d 666, 670 (9th Cir. 2000), *opinion amended and superseded*, 247 F.3d 904 (9th Cir. 2001). "If a petitioner fails to alert the state court to the fact that he is raising a federal constitutional claim, his federal claim is unexhausted regardless of its similarity to the issues raised in state court." *Johnson v. Zenon*, 88 F.3d 828, 830 (9th Cir. 1996). "Moreover, general appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial, are insufficient to establish exhaustion." *Hivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999).

In Ground 1(a) Petitioner asserts a violation of his Sixth Amendment right to a speedy trial. (Doc. 9 at 7.) On direct appeal, Petitioner asserted that "[t]he state re-indicted defendant because it could not try his case within the time limits proscribed by Rule 8, Arizona Rules of Criminal Procedure[.]" (Ex. BB at 3.)

In Ground 2 Petitioner asserts a violation of his Sixth and Fourteenth Amendment rights based on the trial court's alleged failure to sever the marijuana and conspiracy charges. (Doc. 9 at 18.) On direct appeal, Petitioner asserted that "[t]he trial court abused its discretion by failing to sever the sale/transportation of marijuana charge from the

conspiracy charges." (Ex. BB at 5.) Petitioner's argument relied on Ariz. R. Crim. P. 13.3(a) and state law.

In Ground 3 Petitioner asserts a violation of his Fifth, Sixth, and Fourteenth Amendment rights based on the trial court's alleged "[a]buse of discretion, allowing officers to interpret wiretap calls, invading provence [sic] of jury." (Doc. 9 at 19.) On direct appeal, Petitioner asserted that "[t]he trial court abused its discretion by allowing the officers to interpret the wiretap calls, impermissibly invading the provence [sic] of the jury." (Ex. BB at 5.) Petitioner's argument relied on Ariz. R. Evid. 702 and state law.

In Ground 4 Petitioner asserts a violation of his Fifth, Sixth, and Fourteenth Amendment rights based on the trial court's alleged "[a]buse of discretion, not allowing a proper hearing to determine jury misconduct." (Doc. 9 at 20.) On direct appeal, Petitioner asserted that "[t]he court abused its discretion by not conducting a proper hearing to determine whether there was juror misconduct, depriving Leary of a fair trial." (Ex. BB at 9.) Petitioner's argument relied on Ariz. R. Crim. P. 24.1(c)(3) and state law.

In Ground 5 Petitioner asserts a violation of his due process right to a fair trial based on the denial of a change of judge. (Doc. 9 at 21.) In his first PCR petition, Petitioner asserted only a "[d]enial of 10.1 change of judge for cause, due to Judge O'Connor's numerous one sided rulings, refusal to follow the law, the appearance of prejudice bias, is substantial[;] she violated Rule 2.9, 2.11 called for disqualification." (Ex. JJ at 25.) Petitioner's argument is devoid of any allegation regarding federal law or the federal constitution.

In Ground 10 Petitioner asserts a violation of his Sixth and Fourteenth Amendment rights due to the trial court's alleged "[d]enial of mistrial, based on admission of taped recordings of non-defendants." (Doc. 9 at 46.) In his initial PCR Petition, Petitioner asserted that "Judge Karen O'Connor was provided with 'case law' showing that she had to make a finding that there was a conspiracy, a finding that Leary was part of that conspiracy, committed an overt act in furtherance of that conspiracy before recordings were

1  played[] [but] '[t]hat was overruled.'" (Ex. JJ at 8–9.) Petitioner's argument relied on Ariz.

2  R. Evid. 801(d)(2)(E) and state law.

3          In Ground 22 Petitioner asserts a violation of his Fourth and Fourteenth Amendment

4  rights based on the "[d]enial of motion for recusal of Judge Karen O'Connor during

5  sentencing." (Doc. 9 at 70.) In his first PCR petition, Petitioner asserted only the "[d]enial

6  a motion for recusal of Judge Karen O'Connor as sentencing Judge[;] Judge refused to be

7  fair, impartial throughout trial." (Ex. JJ at 25.) Petitioner's argument is devoid of any

8  allegation regarding federal law or the federal constitution.

9          In Ground 23 Petitioner asserts a violation of his Fourth and Fourteenth Amendment

10 rights based on the denial of a change of judge for cause at sentencing. (Doc. 9 at 71.) In

11 his first PCR petition, Petitioner asserted only a "[d]enial of 10.1 change of judge for cause,

12 due to Judge O'Connor's numerous one sided rulings, refusal to follow the law, the

13 appearance of prejudice bias, is substantial[;] she violated Rule 2.9, 2.11 called for

14 disqualification." (Ex. JJ at 25.) This is the same claim Petitioner made in Ground 5 and it

15 similarly fails to allege a federal constitutional claim.

16         Because Petitioner argued the above claims in state court solely as state law issues,

17 he did not fairly present his federal claims to the state courts and the claims are

18 unexhausted. *See Johnson*, 88 F.3d at 830; *see also Grey v. Netherland*, 518 U.S. 152, 162–

19 63 (1996) (a petitioner does not satisfy the exhaustion requirement "by presenting the state

20 courts only with the facts necessary to state a claim for relief[;]" the specific constitutional

21 right allegedly violated must also be identified); *Lopez v. Schriro*, 491 F.3d 1029, 1040

22 (9th Cir. 2007) ("in order to fulfill exhaustion requirements, a petitioner must present to

23 the state courts the substantial equivalent of the claim presented in federal court").

24                  2.  Claims Precluded by Arizona Procedural Rules

25         A habeas petitioner's claim may be barred from federal review if it was actually

26 raised in state court but found by that court to be defaulted on state procedural grounds.

27 *See Coleman v. Thompson*, 501 U.S. 722, 729–30 (1991). If a state court expressly applied

28 a procedural bar when a petitioner attempted to raise the claim in state court, and that state

procedural bar is both "independent"[7] and "adequate,"[8] review of the merits of the claim by a federal habeas court is barred. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991) ("When a state-law default prevents the state court from reaching the merits of a federal claim, that claim can ordinarily not be reviewed in federal court.") (citing *Wainwright v. Sykes*, 433 U.S. 72, 87–88 (1987) and *Murray v. Carrier*, 477 U.S. 478, 485–92 (1986)).

In Ground 9, Petitioner asserts a violation of his Sixth Amendment rights based upon the "[d]enial of peremptory challenges, [and] errors of the jury selection process." (Doc. 9 at 45.) In Ground 11, Petitioner asserts a violation of his Fourteenth Amendment rights based upon the "[i]mproper admission of evidence, over $100,000.00 worth of cocaine not related to Defendant Leary." (*Id.* at 47.) In Ground 13, Petitioner asserts a violation of his Fourteenth Amendment rights to a fair and impartial trial based upon "cumulative errors." (*Id.* at 53.) In Ground 14, Petitioner asserts a violation of his Sixth and Fourteenth Amendment rights because the "[j]ury was devoid of African Americans." (*Id.* at 54.) In Ground 15, Petitioner asserts a violation of his Sixth and Fourteenth Amendment rights based upon the "[v]iolation of exclusion of witness rule." (*Id.* at 55.) In Ground 16, Petitioner asserts a violation of his Sixth and Fourteenth Amendment rights because the trial "[c]ourt errored [sic] in admitting Defendant Leary's medical marijuana as evidence, . . . [when it] was clearly authorized for personal use." (*Id.* at 56.) In Ground 18, Petitioner asserts a violation of his Fourteenth Amendment rights by "[prosecutorial misconduct, malicious prosecution, vindictive prosecution, resulting in frivolous (2nd) indictment." (*Id.* at 58.) Petitioner raised these claims in his first PCR petition and the Rule 32 court found the claims precluded pursuant to Ariz. R. Crim. P. 32.2(a)(3) because they were not raised on direct appeal. (Exs. JJ & KK.)[9] The appellate court granted review but denied relief, upholding the lower court's preclusion. (Ex. MM.)

---

[7] A state procedural default rule is "independent" if it does not depend upon a federal constitutional ruling on the merits. *See Stewart v. Smith*, 536 U.S. 856, 860 (2002).

[8] A state procedural default rule is "adequate" if it is "strictly or regularly followed." *Johnson v. Mississippi*, 486 U.S. 578, 587 (1988).

[9] *See* Ariz. R. Crim. P. 32.2(a)(3) (a defendant is precluded from relief under Rule 32.1 based on any ground waived at trial or on appeal); *see also Nunnemaker*, 501 U.S. at 803 (a higher court's subsequent summary denial of review affirms the lower court's application of a procedural bar); *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004) (in evaluating state court decisions,

1        In Ground 12, Petitioner asserts a violation of his First, Sixth, and Fourteenth

2    Amendment rights based upon the "[c]losure of court room for approximately 6 to 9

3    months." (Doc. 9 at 50.) In Ground 17, Petitioner asserts a violation of his Fourth and

4    Fourteenth Amendment rights based on the trial "[c]ourts [sic] failure to rule on vindictive

5    prosecution motion." (*Id.* at 57.) Petitioner raised these claims in his first PCR petition.

6    (Ex. JJ.) The Rule 32 court found the claims related to the first dismissed indictment and

7    thus not within the scope of Rule 32. (Ex. KK.) The appellate court granted review but

8    denied relief, upholding the lower court's preclusion under Ariz. R. Crim. P. 32.2(a)(3).

9        "Arizona Rule of Criminal Procedure 32.2(a)(3) is independent of federal law and

10   has been regularly and consistently applied, so it is adequate to bar federal review of a

11   claim." *Jones v. Ryan*, 691 F.3d 1093, 1101 (9th Cir. 2012). Accordingly, regardless of

12   whether the above claims were fairly presented to the state courts, the claims are precluded

13   by the state court's application of an express procedural bar.

14             3.   Ineffective Assistance of Counsel Claims

15       Claims for IAC are properly raised in a Rule 32 petition for PCR. "As a general

16   matter, each 'unrelated alleged instance [] of counsel's ineffectiveness' is a separate claim

17   for purposes of exhaustion." *Gulbrandson v. Ryan*, 738 F.3d 976, 992 (9th Cir. 2013)

18   (quoting *Moormann v. Schriro*, 426 F.3d 1044, 1056 (9th Cir. 2005)). This means "all

19   operative facts to an ineffective assistance claim must be presented to the state courts in

20   order for a petitioner to exhaust his remedies." *Hemmerle v. Schriro*, 495 F.3d 1069, 1075

21   (9th Cir. 2007). Asserting an IAC claim "based on one set of facts [presented to the state

22   courts], does not exhaust other claims of ineffective assistance of counsel based on

23   different facts" that were not presented to the state courts. *Date,* 619 F. Supp. 2d at 788.

24   This is "[b]ecause ineffective assistance claims are not fungible, but are instead highly fact-

25   dependent, [requiring] some baseline explication of the facts relating to it[.]" *Hemmerle*,

26   495 F.3d at 1075. As such, "a petitioner who presented any ineffective assistance of counsel

27   claim below can[not] later add unrelated instances of counsel's ineffectiveness to that

28

the federal habeas court looks through summary opinions to the last reasoned decision).

claim." *Id.* (internal quotations and citations omitted).

In Ground 20(a) Petitioner alleges a conflict of interest because appellate counsel represented Petitioner's co-defendant. (Doc. 9 at 66.) In Ground 20(c) Petitioner alleges appellate counsel failed to do an adequate post-trial investigation. (*Id.* at 67.)

Petitioner alleged the following ineffective assistance of appellate counsel claims in his first PCR petition: failure to move for suppression of the wiretap evidence, failure to challenge the denial of a *Franks* hearing, failure to argue denial of a mistrial and inadmissible tape recordings, prosecutorial misconduct and inadmissible cocaine evidence prejudicing the jury, and failure to challenge the sufficiency of "dead bang winners." (Ex. JJ at 23–24.) These claims are separate and distinct from the claims Petitioner now makes on habeas in Grounds 20(a) and (c). Grounds 20(a) and (c) are thus unexhausted because Petitioner failed to properly present them to the state courts in a procedurally appropriate manner. *See Castillo*, 399 F.3d at 998; *Baldwin*, 541 U.S. at 29; *Crowell*, 483 F. Supp. 2d at 931–33; *see also Moormann*, 426 F.3d at 1056–57 (new allegations of IAC not previously raised before the state court cannot be addressed on habeas review).

## C. Effect of Procedural Bar

Claims not previously presented to the state courts on either direct appeal or collateral review are generally barred from federal review because any attempt to return to state court to present them would be futile unless the claims fit into a narrow range of exceptions. *See* Ariz. R. Crim. P. 32.1(d)–(h), 32.2(a) (precluding claims not raised on direct appeal or in prior post-conviction relief petitions), 32.4(a) (time bar), 32.9(c) (petition for review must be filed within thirty days of trial court's decision). Because these rules have been found to be consistently and regularly followed, and because they are independent of federal law, either their specific application to a claim by an Arizona court, or their operation to preclude a return to state court to exhaust a claim, will procedurally bar subsequent review of the merits of such a claim by a federal habeas court. *Stewart v. Smith*, 536 U.S. 856, 860 (2002); *Ortiz v. Stewart*, 149 F.3d 923, 931–32 (9th Cir. 1998) (Rule 32 is strictly followed); *State v. Mata*, 916 P.2d 1035, 1050–52 (Ariz. 1996) (waiver

and preclusion rules strictly applied in post-conviction proceedings).

As explained above, several of Petitioner's claims are unexhausted because Petitioner failed to properly present them to the state courts in a procedurally appropriate manner. Arizona Rules of Criminal Procedure regarding timeliness and preclusion prevent Petitioner from now exhausting those claims in state court. Accordingly, the claims are both technically exhausted and procedurally defaulted and thus not properly before this Court for review. *See Crowell*, 483 F. Supp. 2d at 931–33; *Coleman*, 501 U.S. at 732, 735 n.1; *Garcia*, 2013 WL 4714370 at * 8. Additionally, some of Petitioner's claims were actually raised in state court and thus properly exhausted but are nonetheless procedurally barred from this Court's review because the state court applied a plain procedural bar and found the claims were precluded as waived by Ariz. R. Crim. P. 32.2(a)(3). *See Coleman*, 501 U.S. at 729–30.

When a petitioner has procedurally defaulted his claims, federal habeas review occurs only in limited circumstances. "A state prisoner may overcome the prohibition on reviewing procedurally defaulted claims if he can show cause to excuse his failure to comply with the state procedural rule and actual prejudice resulting from the alleged constitutional violation." *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017) (internal quotations and citation omitted); *Martinez v. Ryan*, 566 U.S. 1, 10 (2012) ("A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law."). Cause requires a showing "that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Impediments to compliance may include interference by officials that makes compliance with the state's procedural rule impracticable, a showing that the factual or legal basis for the claim was not reasonably available, or the procedural default was the result of ineffective assistance of counsel. *Id.* at 488–89. Prejudice requires "showing, not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*,

456 U.S. 152, 170 (1982). The Court need not examine the existence of prejudice if the petitioner fails to establish cause. *Engle v. Isaac*, 456 U.S. 107, 134 n.43 (1982); *Thomas v. Lewis*, 945 F.2d 1119, 1123 n.10 (9th Cir. 1991).

A habeas petitioner "may also qualify for relief from his procedural default if he can show that the procedural default would result in a 'fundamental miscarriage of justice.'" *Cook v. Schriro*, 538 F.3d 1000, 1028 (9th Cir. 2008) (quoting *Schlup v. Delo*, 513 U.S. 298, 321 (1995)). This exception to the procedural default rule is limited to habeas petitioners who can establish that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup*, 513 U.S. at 327; *see also Murray*, 477 U.S. at 496; *Cook*, 538 F.3d at 1028. In order to pass through the *Schlup* gateway, a petitioner's case must be "truly extraordinary," 513 U.S. at 327, and a "tenable actual-innocence gateway" claim will not be found unless the petitioner "persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *McQuiggin*, 569 U.S. at 386 (citing *Schlup*, 513 U.S. at 329).

Here, Petitioner has failed to show cause for, or prejudice arising from, the procedural default of his claims, and the Court can glean none from the record before it. *See Martinez*, 566 U.S. at 10; *Murray*, 477 U.S. at 488. There was no objective factor external to Petitioner's defense that impeded his efforts to comply with the state's procedural rules; Petitioner simply failed to present the specific claims he now attempts to raise on habeas to the state courts in a timely and procedurally appropriate manner. Petitioner does not allege any interference by officials that made compliance with the state's procedural rules impracticable and has not shown that the factual or legal basis for the claims was not reasonably available. *See Murray*, 477 U.S. at 488–489. In his Reply, Petitioner reiterates his version of the facts surrounding his claims and alleges that he was prejudiced, but he fails to offer any cause "for procedurally defaulting his claims[,] . . . [and as such,] there is no basis on which to address the merits of his claims." *Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1305 (9th Cir. 1996).

1    Further, Petitioner's status as an inmate and his lack of legal knowledge do not

2    constitute cause. *See Lewis v. Casey*, 518 U.S. 343, 355 (1996) (The right of access to the

3    courts "does not guarantee inmates the wherewithal to transform themselves into litigating

4    engines capable of filing everything from shareholder derivative actions to slip-and-fall

5    claims. The tools it requires to be provided are those that the inmates need in order to attack

6    their sentences, directly or collaterally, and in order to challenge the conditions of their

7    confinement. Impairment of any *other* litigating capacity is simply one of the incidental

8    (and perfectly constitutional) consequences of conviction and incarceration."); *see also*

9    *Thomas*, 945 F.2d at 1123 (alleged inadequate prison library and legal assistance

10   procedures did not establish cause where petitioner "failed to demonstrate that he, himself,

11   had been denied access to the library" and petitioner's filing of pro se pleadings reflected

12   adequate access to and use of legal materials); *Hughes*, 800 F.2d at 908 (petitioner's pro se

13   status and ignorance of the law do not satisfy the cause standard).

14   While the standard for cause and prejudice is one of discretion and is intended to be

15   flexible, it must yield to exceptional circumstances only. *Hughes*, 800 F.2d at 909.

16   Petitioner bears the responsibility for failing to raise his claims in a timely, properly filed

17   state proceeding and properly exhausting those claims to the Arizona COA. *See Williams*

18   *v. Taylor*, 529 U.S. 420, 437 (2000) ("Federal courts sitting in habeas are not an alternative

19   forum for trying facts and issues which a prisoner made insufficient effort to pursue in state

20   proceedings."). Accordingly, because Petitioner has failed to establish cause to excuse the

21   procedural default of his claims, the Court need not examine the merits of Petitioner's

22   defaulted claims or the purported prejudice.[10]

23   **D.  Merits Review**

24   The Ninth Circuit has held that "a state has 'adjudicated' a petitioner's constitutional

25   claim 'on the merits' for purposes of § 2254(d) when it has decided the petitioner's right

26   to post-conviction relief on the basis of the substance of the constitutional claim advanced,

27   rather than denying the claim on the basis of a procedural or other rule precluding state

28   _____

[10] Petitioner does not argue a fundamental miscarriage of justice to excuse the procedural default of his claims.

court review of the merits." *Lambert v. Blodgett*, 393 F.3d 943, 969 (9th Cir. 2004).

If a habeas petition includes a claim that was properly exhausted, has not been procedurally defaulted, and was "adjudicated on the merits in State court proceedings," federal court review is limited by § 2254(d). Under § 2254(d)(1), a federal court cannot grant habeas relief unless the petitioner shows: (1) that the state court's decision was contrary to federal law as clearly established in the holdings of the United States Supreme Court at the time of the state court decision, *Greene v. Fisher*, 565 U.S. 34, 38 (2011); (2) that it "involved an unreasonable application of" such law, § 2254(d)(1); or (3) that it "was based on an unreasonable determination of the facts" in light of the record before the state court. 28 U.S.C. § 2254(d)(2); *Harrington v. Richter*, 562 U.S. 86 (2011). This standard is "difficult to meet." *Richter*, 562 U.S. at 102. It is also a "highly deferential standard for evaluating state court rulings . . . which demands that state court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (internal quotations and citation omitted).

To assess a claim under § 2254(d)(1), the Court must first identify the "clearly established Federal law," if any, that governs the sufficiency of the claims on habeas review. "Clearly established" federal law consists of the holdings of the Supreme Court at the time the petitioner's state court conviction became final. *Williams v. Taylor*, 529 U.S. 362, 365 (2000); *see Carey v. Musladin*, 549 U.S. 70, 74 (2006). Second, the Court must determine whether a state court decision is "contrary to" the Supreme Court's clearly established precedents. "A state-court decision is 'contrary to' our clearly established precedents if it 'applies a rule that contradicts the governing law set forth in our cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.'" *Early v. Packer*, 537 U.S. 3, 8 (2002) (quoting *Williams*, 529 U.S. at 405–406). To satisfy this standard a state court need not cite Supreme Court cases or even be aware of such cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Id*.

Under the "unreasonable application" prong of § 2254(d)(1), a federal habeas court

may grant relief where a "state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case" or "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend the principle to a new context where it should apply." *Williams*, 529 U.S. at 407. For a federal court to find a state court's application of Supreme Court precedent "unreasonable," the petitioner must show that the state court's decision was not merely incorrect or erroneous, but "objectively unreasonable." *Id.* at 409; *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *Visciotti*, 537 U.S. at 25. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).

To find that a state court's factual determination is unreasonable under § 2254(d)(2), the court must be "convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record." *Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004), *abrogated on other grounds as discussed in Murray (Robert) v. Schriro*, 745 F.3d 984, 999–1000 (9th Cir. 2014). "This is a daunting standard—one that will be satisfied in relatively few cases." *Id*. In considering a challenge under § 2254(d)(2), state court factual determinations are presumed to be correct, and a petitioner bears the "burden of rebutting this presumption by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Landrigan*, 550 U.S. at 473–74; *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005).

Under AEDPA's deferential standards, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (quoting *Yarborough*, 541 U.S. at 664). Finally, where the state court decides the merits of a claim without providing its rationale, the federal court independently reviews the record to assess whether the state court decision was objectively unreasonable under controlling federal law. *See Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003); *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002); *Delgado v. Lewis*, 223 F.3d 976, 981–82 (9th Cir. 2000)

("Federal habeas review is not de novo when the state court does not supply reasoning for its decision, but an independent review of the record is required to determine whether the state court clearly erred in its application of controlling federal law."). Although the record is reviewed independently, the federal court nevertheless defers to the state court's ultimate decision. *Pirtle*, 313 F.3d at 1167; *see also Himes*, 336 F.3d at 853.

### 1. Ground 1(b)

Petitioner alleges prosecutorial vindictiveness in violation of his rights under the Fourth, Sixth, and Fourteenth Amendments because the prosecutor dismissed the original indictment and reindicted Petitioner on additional charges. (Doc. 9 at 7.) Petitioner properly exhausted this claim by presenting it to the Arizona COA on direct appeal. (Ex. BB.) The COA denied the claim, finding that the trial court did not abuse its discretion when it denied Petitioner's motion to dismiss the 2013 case based on prosecutorial vindictiveness. (Ex. EE ¶ 17.)[11]

---

[11]The Arizona Court of Appeals summarized the procedural background of the case as follows:

> The State indicted Leary and sixty-three other defendants in a 226-count indictment in the 2011 case. Within that indictment the State charged Leary, among other things, with conspiracy to commit possession of narcotic drugs for sale and possession for sale of cocaine. The State re-indicted Leary and the four remaining codefendants in the instant case on April 8, 2013. The 2013 indictment included the original charges against Leary plus one new count of sale or transportation for sale of marijuana.

> The minute entry from an April 15, 2013 conference in the 2011 case noted that the last day to begin trial was May 20, 2013. At that conference, the State informed the trial court that the State had re-indicted Leary and the remaining codefendants. The State made an oral motion to dismiss the 2011 case but Leary asked the trial court to direct the State to file a written motion. The trial court did not rule on the oral motion to dismiss.

> The trial court held a status conference in the 2011case a week later on April 22, 2013. This was supposed to be the day trial started. The transcript of that conference reflects that the State informed the court that it had re-indicted the remaining defendants. The State further argued it was now necessary to continue the 2011 case because one of Leary's codefendants was still undergoing a competency evaluation. Leary objected to a continuance and argued he was ready to go to trial. The court continued the trial for thirty days because of the codefendant's Rule 11 proceeding.

1   The COA's decision was not contrary to federal law.

> The standard of review for prosecutorial misconduct in federal
> habeas cases is "the narrow one of due process, and not the
> broad exercise of supervisory power." *Donnelly v.*
> *DeChristoforo*, 416 U.S. 637, 642, 94 S. Ct. 1868, 40 L.Ed.2d
> 431 (1974). A defendant's due process rights are violated if
> prosecutorial misconduct renders a trial "fundamentally
> unfair." *Darden v. Wainwright*, 477 U.S. 168, 183, 106 S. Ct.
> 2464, 91 L.Ed.2d 144 (1986).

*Drayden v. White*, 232 F.3d 704, 713 (9th Cir. 2000). "A prosecutor violates due process when he seeks additional charges solely to punish a defendant for exercising a constitutional or statutory right." *United States v. Kent*, 649 F.3d 906, 912 (9th Cir. 2011) (quoting *United States v. Gamez-Orduno*, 235 F.3d 453, 462 (9th Cir. 2000)). "A defendant

---

> The trial court held a complex case management conference in the
> 2011 case on May 14, 2013. On that date the court scheduled various
> matters, including a settlement conference, excluded all time and
> ordered that the new last day to begin trial was June 9, 2013. There
> is nothing in the minute entry to indicate whether Leary waived time
> or raised an objection. At the subsequent complex case management
> conference, the trial court again scheduled a future hearing,
> excluded all time and ordered that the new last day to begin trial was
> July 9, 2013. On that occasion the record is clear that Leary waived
> the applicable time limits.
>
> One month later, and one week before the Rule 8 deadline, the State
> filed its written motion to dismiss without prejudice the 2011 case,
> and once again argued that it had re-indicted the only remaining
> defendants and had brought additional charges. The State further
> argued the motion was not made for the purpose of avoiding the
> time-limiting provisions of Rule 8. The trial court granted the
> motion "Pursuant to State's Motion to Dismiss" the next day, six
> days before the Rule 8 deadline.
>
> Three months later, Leary filed his motion to dismiss the instant
> case. Leary argued the State re-indicted him to circumvent the Rule
> 8 deadline because it knew it could not be ready for trial in the 2011
> case and the trial court would not continue the matter. The trial court
> denied the motion and found the State had the authority to re-indict
> Leary, add additional counts and dismiss the original case. The court
> further noted that all parties knew "from the onset" that the State
> would re-indict the remaining defendants if the 2011 cases were not
> resolved. In its ruling on Leary's motion for reconsideration, the
> court added that the last day in the 2011 case had to be tolled because
> of the codefendant's competency evaluation. Leary filed a special
> action in this court and we declined jurisdiction. Once the State re-
> indicted Leary, the Rule 8 time limits began "anew." *State v.*
> *Lemming,* 188 Ariz. 459,461 (App. 1997) (citation omitted).

(Ex. EE ¶¶ 4–9.)

- 25 -

may establish vindictive prosecution (1) by producing direct evidence of the prosecutor's punitive motivation . . . , or (2) by showing that the circumstances establish a reasonable likelihood of vindictiveness, thus giving rise to a presumption that the Government must in turn rebut." *Id.* (internal quotations and citations omitted). Here, the COA cited the appropriate law and applied this standard in reviewing Petitioner's claims on appeal. (*See* Ex. EE ¶ 14 (quoting *State v. Mieg*, 225 Ariz. 445, 447 ¶ 10 (App. 2010) (quoting *United States v. Goodwin*, 457 U.S. 368, 384 (1982)))).

The COA decision was not an unreasonable application of the federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented. On direct appeal, Petitioner argued that the State dismissed the 2011 case and reindicted him on additional charges as an act of prosecutorial vindictiveness in response to Petitioner exercising his right to go to trial in the 2011 case. In rejecting this claim, the COA noted the two ways that a defendant may establish vindictive prosecution and concluded that in Petitioner's case, "[t]he possibility that a prosecutor would respond to a defendant's pretrial demand for a jury trial by bringing charges not in the public interest that could be explained only as a penalty imposed on the defendant is so *unlikely* that a presumption of vindictiveness certainly is not warranted." (Ex. EE ¶ 15 (quoting *Goodwin*, 457 U.S. at 384)). The court reasoned that it was "within the prosecutor's discretion to determine whether to file criminal charges and which charges to file" and that "the State is entitled to respond to changes in the procedural posture of a case [and s]o long as the State does not violate due process, this can include bringing new charges." (*Id.* ¶ 17.) The court concluded that there was "no evidence that the State sought to punish, penalize or deter Leary when it re-indicted him and added an additional charge" and that the evidence showed "the State reacted to the changing evidentiary and procedural posture of the case and did so in a permissible manner that did not prejudice Leary in any way." (*Id.* ¶ 18.)[12]

---

[12] In rejecting Petitioner's related claim that the trial court denied his right to a speedy trial under Ariz. R. Crim. P. 8.2, the COA concluded that "[t]he trial court in the 2013 case did not abuse its discretion when it held the State had the authority to re-indict Leary and seek dismissal of the 2011 case." (Ex. EE ¶ 11.) The court reasoned that the trial court dismissed the 2011 case pursuant to the State's motion to dismiss, which was "sufficient indication the 2011 court found good cause to dismiss based on the new indictment and that the State did not seek to avoid Rule 8

Petitioner contends that the State did not initially charge him with every conceivable felony because there were none and that the State fabricated evidence of a new charge by soliciting false testimony from Bobby Newton. (Doc. 38 at 15–16.) Petitioner further alleges that the State only sought a second indictment after Petitioner refused to drop his civil lawsuit against the police and refused to become a government informant. (*Id.* at 16.) Petitioner claims these circumstances show that the prosecutor sought the second indictment to punish him for refusing to take an off-the-record illegal plea. (*Id.* at 17.) While Petitioner may disagree with the state court's conclusion on the vindictive prosecution claim, Petitioner's allegations fail to show that the state court's decision was objectively unreasonable. As the Supreme Court has explained:

> Since charges brought in an original indictment may be abandoned by the prosecutor in the course of plea negotiation—in often what is clearly a "benefit" to the defendant—changes in the charging decision that occur in the context of plea negotiation are an inaccurate measure of improper prosecutorial "vindictiveness." An initial indictment—from which the prosecutor embarks on a course of plea negotiation—does not necessarily define the extent of the legitimate interest in prosecution. For just as a prosecutor may forgo legitimate charges already brought in an effort to save the time and expense of trial, a prosecutor may file additional charges if an initial expectation that a defendant would plead guilty to lesser charges proves unfounded

*Goodwin*, 457 U.S. at 379–80. Thus, "in the context of pretrial plea negotiations, 'vindictiveness will not be presumed simply from the fact that a more severe charge followed on, or even resulted from, the defendant's exercise of a right.'" *Kent*, 649 F.3d at 913 (quoting *Gamez-Orduno*, 235 F.3d at 462). And, "prosecutors may add charges pretrial for any number of permissible reasons, such as coming to a new understanding of the crime or evidence." *Kent*, 649 F.3d at 913. "[D]ue process does not in any sense forbid enhanced

---

as the State pled in its motion." *Id.* The COA cited Ariz. R. Crim. P. 16.6(a), which states that, "[t]he court, on motion of the prosecutor showing good cause therefor, may order that a prosecution be dismissed at any time upon finding that the purpose of the dismissal is not to avoid the provisions of Rule 8." The court further found that Petitioner failed to establish that he suffered any prejudice, such as identifying any evidence or witnesses who were not available for trial in 2013, and did not otherwise explain how re-indictment or delay affected his defense or deprived him of a fair trial. (*Id.* ¶ 12.) The court thus concluded that even if there had been a violation of Rule 8, "it would have been mere technical error that did not warrant reversal of Leary's convictions." (*Id.*)

- 27 -

sentences or charges, but only enhancement motivated by actual vindictiveness toward the defendant for having exercised guaranteed rights." *Id.* at 915 (quoting *Wasman v. United States*, 468 U.S. 559, 568 (1984)).

In sum, the record does not clearly show that the State reindicted Petitioner as an act of prosecutorial vindictiveness, or that the 2013 indictment resulted in a trial that was fundamentally unfair to Petitioner. Thus, this Court cannot say that it was objectively unreasonable for the COA to find that no due process violation occurred. Thus, Ground 1(b) will be dismissed.

   2.   IAC Claims

The Supreme Court established a two-part test for evaluating IAC claims in *Strickland v. Washington*, 466 U.S. 668 (1984). To establish that counsel was ineffective under *Strickland*, Petitioner must show: (1) trial counsel's performance was deficient; and (2) trial counsel's deficient performance prejudiced Petitioner's defense. *Ortiz v. Stewart*, 149 F.3d 923, 932 (9th Cir. 1998) (citing *Strickland*, 466 U.S. at 688, 694). To establish deficient performance, Petitioner must show that "counsel made errors so serious . . . that counsel's representation fell below an objective standard of reasonableness . . . under prevailing professional norms." *Strickland*, 466 U.S. at 687–688. The relevant inquiry is not what defense counsel could have done, but rather whether the decisions made by defense counsel were reasonable. *Babbit v. Calderon*, 151 F.3d 1170, 1173 (9th Cir. 1998). In considering this factor, counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Strickland*, 466 U.S. at 690.

The Ninth Circuit "h[as] explained that '[r]eview of counsel's performance is highly deferential and there is a strong presumption that counsel's conduct fell within the wide range of reasonable representation.'" *Ortiz*, 149 F.3d at 932 (quoting *Hensley v. Crist*, 67 F.3d 181, 184 (9th Cir. 1995)). "The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances[.]" *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). Additionally, "[a]

fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. Acts or omissions that "might be considered sound trial strategy" do not constitute ineffective assistance. *Id.*

Even where trial counsel's performance is deficient, a petitioner must also establish prejudice in order to prevail on an IAC claim. To establish prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Under the prejudice factor, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112. Further, because failure to make the required showing of either deficient performance or prejudice defeats the claim, the court need not address both factors where one is lacking. *Strickland*, 466 U.S. at 697–700; *LaGrand v. Stewart*, 133 F.3d 1253, 1270 (9th Cir. 1998) (a court need not look at both deficiency and prejudice if the petitioner cannot establish one or the other).

Additionally, under the AEDPA, a federal court's review of the state court's decision on an IAC claim is subject to another level of deference. *Bell v. Cone*, 535 U.S. 685, 698–699 (2002). This creates a "doubly deferential" review standard in which a habeas petitioner must show not only that there was a violation of *Strickland*, but also that the state court's resolution of the claim was more than wrong, it was an objectively unreasonable application of *Strickland*. *See Yarborough v. Gentry*, 540 U.S. 1, 6 (2003); *Bell*, 535 U.S. at 698–99; *Woodford*, 537 U.S. at 25; *Cullen v. Pinholster*, 563 U.S. 170, 171 (2011) (federal habeas court's review of state court's decision on ineffective assistance of counsel claim is "doubly deferential"). Thus, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S. at 105.

a.   Ground 19(a)

Petitioner alleges trial counsel was ineffective for failing to subpoena Karla Greyson as a witness to challenge Bobby Newton's testimony.[13] (Doc. 9 at 62.) Petitioner exhausted this claim by presenting it to the trial court and the COA in his first PCR proceedings. (Exs. JJ & LL.) For purposes of federal habeas review, Petitioner bears the burden of showing that the post-conviction relief court, in ruling that trial counsel was not ineffective, applied *Strickland* in an objectively unreasonable manner.

Here, the state court's finding that Petitioner's claim that trial counsel was ineffective for failing to subpoena Greyson was without merit is supported by the record before this Court and was not an unreasonable application of *Strickland*. First, in rejecting Petitioner's IAC claims, the trial court correctly cited to *Strickland* as the appropriate federal law. (Ex. KK at 3.) The court found that Petitioner failed "to present a factual or legal argument showing a challenge to any of his claims would have proven successful" and that Petitioner therefore "failed to demonstrate that his attorney fell below that of the prevailing objective standards." (*Id.* (internal quotations and citation omitted).) The court further concluded that Petitioner failed to show that "any error, if made, would have resulted in a different outcome." (*Id.*) The court thus found that Petitioner failed to establish any colorable claims for relief and summarily dismissed the petition. (*Id.* at 4.)

Second, in denying Petitioner's petition for review, the Arizona COA concluded that Petitioner failed to establish that the trial court erred in rejecting his IAC claims. (Ex. MM ¶ 7.) Rather, while Petitioner briefly summarized his IAC claims on review, he failed to "develop any meaningful argument that he was entitled to relief" and "instead provide[d] a litany of assertions largely unsupported by citation to the record or to controlling authority as required by Rule 32.9(c)(4)(B)." (*Id.*)[14]

---

[13] Newton testified at trial that he purchased marijuana from Petitioner. (Ex. N at 62–68.)

[14] "AEDPA directs federal courts to train their attention on the particular reasons why each state court that considered a prisoner's claims denied relief. When more than one state court has adjudicated a claim, the federal court analyzes the last 'reasoned' state court decision." *Curiel v. Miller*, 830 F.3d 864, 869 (9th Cir. 2016) (citation omitted). However, where "the last reasoned decision adopted or substantially incorporated the reasoning from a previous decision . . . it [is] reasonable for the reviewing court to look at both decisions to fully ascertain the reasoning of the last decision." *Barker v. Fleming*, 423 F.3d 1085, 1093 (9th Cir. 2005); *see also Robinson*, 360

1          Petitioner contends that effective counsel would have subpoenaed Greyson because

2   Petitioner demanded it and Greyson was willing to testify. (Doc. 9 at 62.) Petitioner alleges

3   Greyson's testimony would have impeached Newton's testimony that he did not receive

4   earnings from prostitutes and did not make pornographic movies with prostitutes, and that

5   this would show that because Newton lied about his past, it was also reasonable that he

6   was lying about a marijuana transaction that occurred between Petitioner and Newton. (*Id.*)

7   Petitioner argues Greyson's testimony was important to poke holes in the State's case

8   because the State had no direct or circumstantial evidence of the marijuana transaction and

9   no one to corroborate Newton's testimony. (*Id.* at 62–63.) Petitioner's arguments are

10  unavailing.

11         "[C]omplaints of uncalled witnesses are not favored in federal habeas corpus review

12  because allegations of what the witness would have testified are largely speculative." *Evans*

13  *v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002). A petitioner may not use self-serving

14  speculation to argue that a witness might have provided favorable testimony, but must

15  adduce evidence to show what the witness's testimony would have been. *Grisby v.*

16  *Blodgett*, 130 F.3d 365, 373 (9th Cir. 1997); *see also United States v. Ashimi*, 932 F.2d

17  643, 650 (7th Cir. 1991) ("[E]vidence about the testimony of a putative witness must

18  generally be presented in the form of actual testimony by the witness or on affidavit. A

19  defendant cannot simply state that the testimony would have been favorable; self-serving

20  speculation will not sustain an ineffective assistance claim."). Further, a "difference of

21  opinion as to trial tactics . . . alone generally does not constitute a denial of effective

22  assistance of counsel." *U.S. v. Mayo*, 646 F.2d 369, 375 (9th Cir. 1981); *see also Gustave*

23  *v. U.S.*, 627 F.2d 901, 904 (1980) ("Mere criticism of a tactic or strategy is not in itself

24  sufficient to support a charge of inadequate representation."); *Strickland*, 466 U.S. at 689

25  (acts or omissions that "might be considered sound trial strategy" do not constitute

26  ineffective assistance of counsel).

27         Here, Petitioner's argument is that it is inconceivable that it was counsel's strategy

28  _____

F.3d at 1055 (in evaluating state court decisions, the federal habeas court looks through summary
opinions to the last reasoned decision).

to not subpoena Greyson because she could have "shamed [the] State's star witness." (Doc.

9 at 62.) However, the record reflects that trial counsel did attempt to call a witness to

impeach Newton's testimony. During cross-examination, trial counsel elicited testimony

that Newton had entered into a plea agreement in exchange for his testimony against

Petitioner, that he had previously used crack cocaine and marijuana, and that he had a prior

conviction for pandering. (Ex. N at 75–85.) Newton denied that his prior conviction was

the result of him acting as a "pimp" and the State objected to the testimony as irrelevant.

(*Id.* at 95–96.) Defense counsel stated that if Newton continued to deny the substance of

the conviction, counsel was prepared to call a witness to contradict Newton's testimony,

and argued the evidence went to Newton's credibility as a witness who had taken a

testimonial agreement. (*Id.* at 96–97.) The trial court sustained the State's objection and

precluded any further discussion of Newton's prior conviction. (*Id.* at 97.) Thus, Petitioner

cannot show that trial counsel acted ineffectively when counsel did attempt to introduce

witness testimony to impeach Newton's testimony. *See James v. Borg*, 24 F.3d 20, 27 (9th

Cir. 1994) ("Counsel's failure to make a futile motion does not constitute ineffective

assistance of counsel."). Nor can Petitioner show prejudice by counsel's alleged deficiency

because the trial court precluded counsel from introducing any testimony or evidence

showing the underlying reason for Newton's prior conviction.

Further, any allegations of what Greyson might have said if she had testified are

pure speculation, and Petitioner has provided no affidavit or other evidence to show that

Greyson's testimony would have been favorable to the defense. *Evans*, 285 F.3d at 377.

Therefore, while the Court is not required to consider prejudice because Petitioner has

failed to show that counsel's performance was deficient, the Court further finds that

Petitioner has not shown a reasonable probability that Greyson's testimony would have

probably changed the verdict. The Court has thoroughly reviewed the record, including the

transcripts from Petitioner's trial, and it contains ample evidence to support the jury's

verdicts. *See Hurles v. Ryan*, 752 F.3d 768, 781–82 (9th Cir. 2014) (in capital case, counsel

was likely deficient for failing to investigate and locate a witness who could have provided

crucial insight into defendant's behavior and mental state, but defendant failed to "show a reasonable probability that but for counsel's failure to track down the witness, the result of the guilt phase would have been different"; because witness had not been found, court could only speculate as to the nature of her testimony and whether it would have helped or hurt defense; thus, defendant's "claim of prejudice amounts to mere speculation").

Because Petitioner cannot show a substantial likelihood that the result would have been different had Greyson testified at trial, the Court concludes that the state court's finding that Petitioner's claim was without merit is supported by the record and Petitioner has failed to show that the state court's resolution of this claim was an objectively unreasonable application of *Strickland*. The Court will deny relief on Ground 19(a).

b.  Ground 19(b)

Petitioner alleges trial counsel was ineffective for failing to challenge the search warrant for his residence. (Doc. 9 at 63–64.) Petitioner exhausted this claim by presenting it to the trial court and the COA in his first PCR proceedings. (Exs. JJ & LL.)

The state court's finding that Petitioner's claim was without merit is supported by the record and was not an unreasonable application of *Strickland*. In denying Petitioner's Rule 32 petition on this claim, the court applied *Strickland* and found that Petitioner failed to cite any factual or legal basis as to how a challenge to the search warrant "would have succeeded other than his own innuendo, opinion, and speculation," and thus failed to establish deficient performance. (Ex. KK at 3.) The court further found that Petitioner failed to show that "any error, if made, would have resulted in a different outcome" and thus failed to establish prejudice. *Id.* As stated above, the Arizona COA noted that while Petitioner briefly summarized his IAC claims on review, he failed to "develop any meaningful argument that he was entitled to relief" and "instead provide[d] a litany of assertions largely unsupported by citation to the record or to controlling authority as required by Rule 32.9(c)(4)(B)." The appellate court thus concluded that Petitioner failed to establish that the trial court erred in rejecting his IAC claims. (Ex. MM ¶ 7.)

When reviewing a claim of IAC, this Court "begin[s] with the premise that under

the circumstances, the challenged action [] might be considered sound trial strategy . . . [and w]e affirmatively entertain the range of possible reasons . . . counsel may have had for proceeding as they did." *Elmore v. Sinclair*, 799 F.3d 1238, 1248–49 (9th Cir. 2015) (second and fifth alterations in original) (internal quotations and citations omitted). "As long as defense counsel uses a sound trial strategy, employing that strategy does not constitute deficient performance." *Id.* at 1250 (internal quotations and citation omitted). Further, "[no decision of the Supreme Court] suggests . . . that the indigent defendant has a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." *Jones v. Barnes*, 463 U.S. 745, 751 (1983). To require otherwise would "seriously undermine[] the ability of counsel to present the client's case in accord with counsel's professional evaluation." *Id.*

Here, Petitioner alleges counsel's strategy must be doubted because Petitioner demanded that the warrant be challenged and the search did not result in any evidence that Petitioner could have been arrested for. (Doc. 9 at 64.) Petitioner further contends that counsel knew the police lied to obtain the warrant, knew there was no nexus to Petitioner's home and the alleged crime, and knew that no illegal drugs were found as a result of the search. (*Id.*) Petitioner argues that a challenge to the warrant would have been successful because the City of Phoenix paid Petitioner $5000.00 to compensate him for money and property taken by the police during execution of the warrant, and because a challenge would have revealed that the police lied to obtain the warrant by falsely stating cocaine, guns, and signs of gang activity would be found. (Doc. 38 at 31–32.) Petitioner further argues that suppression of the warrant could have eliminated the trial judge's ability to use evidence of Petitioner's medical marijuana against him as a favor to the prosecutor to support the second indictment. (*Id.* at 32.) Petitioner's unsupported allegations fail to show that trial counsel's decision not to challenge the search warrant was not a sound trial strategy. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. As the Ninth Circuit has

1    artfully explained: "The test has nothing to do with what the best lawyers would have done.

2    Nor is the test even what most good lawyers would have done. We ask only whether some

3    reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel

4    acted at trial." *Coleman v. Calderon*, 150 F.3d 1105, 1113 (9th Cir.), *rev'd on other*

5    *grounds*, 525 U.S. 141 (1998). That Petitioner disagrees with counsel's decision not to

6    challenge the search warrant does not make the decision wrong. *See Gustave*, 627 F.2d at

7    904 ("Mere criticism of a tactic or strategy is not in itself sufficient to support a charge of

8    inadequate representation.").

9         While the Court is not required to consider prejudice because Petitioner has failed

10   to show deficient performance, the Court further finds that Petitioner has not shown a

11   reasonable probability that if trial counsel had challenged the search warrant, the outcome

12   of Petitioner's trial would have been different. The record reflects that although some

13   marijuana was found in Petitioner's home, Petitioner was not charged with any criminal

14   offenses related to that marijuana. (*See* Ex. A at 22 (Indictment count 64 charging

15   Petitioner with sale or transportation for sale of marijuana to Bobby Newton); Ex. N at 62–

16   68 (Newton testifying that he purchased marijuana from Petitioner); Ex. P at 21–24

17   (testimony by Officer Wong describing surveillance of Petitioner's home and observing

18   Petitioner getting into a vehicle, driving to a car dealership where another male entered the

19   vehicle, then driving to Newton's house).)

20        Accordingly, the state court's finding that Petitioner's claim was without merit is

21   supported by the record before this Court and Petitioner has failed to show that the state

22   court's resolution of this claim was an objectively unreasonable application of *Strickland*.

23   The Court will deny relief on Ground 19(b).

24             c.  Ground 19(c)

25        Petitioner alleges trial counsel was ineffective for failing to challenge the second

26   indictment. (Doc. 9 at 65.) Petitioner exhausted this claim by presenting it to the trial court

27   and the COA in his first PCR proceedings. (Exs. JJ & LL.)

28        The state court's finding that Petitioner's claim that trial counsel was ineffective for

- 35 -

failing to challenge the second indictment was without merit is supported by the record before this Court and was not an unreasonable application of *Strickland*. In denying Petitioner's Rule 32 petition on this claim, the court applied *Strickland* and found that Petitioner failed "to present a factual or legal argument showing a challenge to any of his claims would have proven successful" and thus failed to establish deficient performance. (Ex. KK at 3.) The court further found that Petitioner failed to show that "any error, if made, would have resulted in a different outcome" and thus failed to establish prejudice. *Id.* As stated above, the Arizona COA noted that while Petitioner briefly summarized his IAC claims on review, he failed to "develop any meaningful argument that he was entitled to relief" and therefore failed to establish that the trial court erred in rejecting his IAC claims. (Ex. MM ¶ 7.)

Petitioner contends that he begged trial counsel to challenge the validity of the second indictment and that counsel purposely hid the grand jury transcripts from Petitioner. (Doc. 9 at 65.) Petitioner's unsupported allegations fail to establish that counsel acted deficiently. *See Jones v. Gomez*, 66 F.3d 199, 205 (9th Cir. 1995) ("[Petitioner's] conclusory suggestions that his trial and state appellate counsel provided ineffective assistance fall far short of stating a valid claim of constitutional violation."); *see also Gustave*, 627 F.2d at 904 ("Mere criticism of a tactic or strategy is not in itself sufficient to support a charge of inadequate representation."). Further, Petitioner cannot show prejudice in light of the Arizona COA ruling that the State did not violate due process in reindicting Petitioner on additional charges (*see* Ex. EE ¶¶ 15–18), and the jury's ultimate finding of guilt. *See United States v. Anderson*, 61 F.3d 1290, 1297 n.5 (7th Cir. 1995) (petitioner could not show counsel acted deficiently for failing to challenge the indictment because petitioner's "subsequent conviction establishes that there was no 'reasonable probability' that the result of the proceeding would have been different but for his trial counsel's alleged error"); *see also United States v. Mechanik*, 475 U.S. 66 (1986) (holding petit jury's guilty verdict in prosecution for drug-related offenses and conspiracy established probable cause to charge defendants with those offenses and thus rendered

1   harmless any error in grand jury's charging decision); *Murray v. Schriro*, 2006 WL

2   988133, at *7 (D. Ariz. Apr. 13, 2006) ("Because a jury found Petitioner guilty of the

3   charged offenses beyond a reasonable doubt, the alleged absence of probable cause before

4   the grand jury, even if true, would be harmless error.").

5       Accordingly, the state court's finding that Petitioner's claim was without merit is

6   supported by the record before this Court and Petitioner has failed to show that the state

7   court's resolution of this claim was an objectively unreasonable application of *Strickland*.

8   The Court will deny relief on Ground 19(c).

9                d.  Ground 20(b)

10       Petitioner alleges appellate counsel was ineffective for failing to challenge the trial

11   court's denial of Petitioner's motion to suppress the wiretap evidence and denial of

12   Petitioner's request for a *Franks* hearing. (Doc. 9 at 66.) Petitioner exhausted this claim by

13   presenting it to the trial court and the COA in his first PCR proceedings. (Exs. JJ & LL.)[15]

14       The state court's finding that Petitioner's claim was without merit is supported by

15   the record before this Court and was not an unreasonable application of *Strickland*. In

16   denying Petitioner's Rule 32 petition on this claim, the trial court applied *Strickland* and

17   found that Petitioner failed to "demonstrate a reasonable probability that but for appellate

18   counsel's deficient performance, the outcome of the appeal would have been different."

19   (Ex. KK at 4.) The court reasoned that "[a]ppellate counsel is not ineffective for selecting

20   some issues and rejecting others" and found that Petitioner failed to show "any factual or

21   legal basis to demonstrate that the outcome of his appeal would have changed by raising

22   any of these claims." (*Id.*) As stated above, the Arizona COA noted that while Petitioner

23   briefly summarized his ineffective assistance of trial and appellate counsel claims on

24   review, he failed to "develop any meaningful argument that he was entitled to relief" and

25   "instead provide[d] a litany of assertions largely unsupported by citation to the record or

26   to controlling authority as required by Rule 32.9(c)(4)(B)." The court thus concluded that

27

28          [15] The Court notes, however, that Petitioner failed to present any meaningful argument on his ineffective assistance of appellate counsel claims and merely listed the claims in his PCR petition. (Ex. JJ at 24.)

1   Petitioner failed to establish that the trial court erred in rejecting his IAC claims. (Ex. MM
2   ¶ 7.)

3          The Supreme Court, "in holding that a State must provide counsel for an indigent
4   appellant on his first appeal as of right, [has] recognized the superior ability of trained
5   counsel in the 'examination into the record, research of the law, and marshalling of
6   arguments on [the appellant's] behalf.'" *Jones*, 463 U.S. at 751 (second alteration in
7   original) (quoting *Douglas v. California*, 372 U.S. 353, 358 (1963)); *see also United States
8   v. Ricks*, 810 F.2d 195 (4th Cir. 1987) ("Decisions by appellate counsel concerning which
9   legal issues will be presented on appeal are 'uniquely within the lawyer's skill and
10   competence, and their resolution is ultimately left to his judgment.'" (quoting *Cerbo v.
11   Fauver*, 616 F.2d 714, 718 (3d Cir.), *cert. denied*, 449 U.S. 858 (1980))). "There is no
12   constitutional requirement that an advocate argue every issue on appeal, or that he present
13   those chosen by the defendant. The determination of the issues to be raised in the appellate
14   court is a matter which addresses itself to the sound discretion of the advocate." *State v.
15   Jesperson*, 1997 WL 39501, at *2 (Tenn. Crim. App. Jan. 28, 1997) (citing *Jones*, 463 U.S.
16   at 750–51).

17          Here, Petitioner contends that the wiretap was the heart of the State's case, but
18   appellate counsel refused his demands to challenge the wiretap and refused to discuss the
19   issue with Petitioner. (Doc. 9 at 66.) Petitioner notes that he even filed a motion to the court
20   stating that appellate counsel would not raise claims on his behalf, which the court denied.
21   (*Id.* at 66–67.) Petitioner included a letter from appellate counsel with his Reply, wherein
22   counsel states that she did not include the *Franks* issue because she did not think it was a
23   viable issue for appeal, but that Petitioner could raise the issue in a PCR petition if he
24   disagreed. (Doc. 38-1 at 4.) That Petitioner's disagreement with appellate counsel's
25   decisions does not make counsel ineffective for failing to raise issues that counsel, in
26   exercising her discretion, reasonably determined should not be presented. *Gustave*, 627
27   F.2d at 906 ("There is no requirement that an attorney appeal issues that are clearly
28   untenable[, and c]ounsel need not appeal every possible question of law at the risk of being

found to be ineffective."); *see also Premo v. Moore*, 562 U.S. 115, 124 (2011) (identifying "the relevant question under *Strickland*" as whether a "competent attorney would think a motion . . . would have failed," and explaining that, if "suppression would have been futile . . . his representation was adequate under *Strickland*, or at least . . . it would have been reasonable for the state court to reach that conclusion"); *James v. Borg*, 24 F.3d 20, 27 (9th Cir. 1994) (finding no ineffective assistance where the motion that allegedly should have been made would have been futile).

Nor has Petitioner shown prejudice. Petitioner claims that a challenge to the wiretap would have been successful as the wiretap was fatally flawed because the affidavit lacked probable cause, the affiants lied about the reliability of informants and physical surveillance, the affiants used a sting ray device, GPS trackers, pen register, and trap trace device without a warrant, and the trial judge refused to make a ruling on the necessity of the wiretap. (Doc. 38 at 44.) However, Petitioner fails to provide any evidence in support of these allegations, and the record reveals that the 61-page affidavit contained ample information to support a finding of probable cause to issue the wiretap. (*See* Ex. FFF Attach. C.) *See also Franks v. Delaware*, 438 U.S. 154, 171 (1978) ("There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof."); *Phillips v. Mitchell*, 187 F. App'x 678, 679 (9th Cir. 2006) ("In order to demonstrate prejudice when the alleged deficiency was the failure to file a motion to suppress evidence, the petitioner must show that the motion would have been meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence.").

Accordingly, the state court's finding that Petitioner's claim was without merit is supported by the record before this Court and Petitioner has failed to show that the state court's resolution of this claim was an objectively unreasonable application of *Strickland*.

The Court will deny relief on Ground 20(b).

e.   Ground 20(d)

Petitioner alleges appellate counsel was ineffective for failing to challenge the State's admission of drug evidence seized from other co-conspirators. (Doc. 9 at 68.) Petitioner exhausted this claim by presenting it to the trial court and the COA in his first PCR proceedings. (Exs. JJ & LL.)[16]

The state court's finding that Petitioner's claim was without merit is supported by the record before this Court and was not an unreasonable application of *Strickland*. In denying Petitioner's Rule 32 petition on this claim, the trial court applied *Strickland* and found that Petitioner failed to show deficient performance, reasoning that "[a]ppellate counsel is not ineffective for selecting some issues and rejecting others." (Ex. KK at 4.) The court further found that Petitioner failed to show "any factual or legal basis to demonstrate that the outcome of his appeal would have changed by raising any of these claims" and thus failed to establish prejudice. (*Id.*) And again, as stated above, the Arizona COA noted that while Petitioner briefly summarized his ineffective assistance of trial and appellate counsel claims on review, he failed to "develop any meaningful argument that he was entitled to relief" and therefore failed to establish that the trial court erred in rejecting his IAC claims. (Ex. MM ¶ 7.)

 The question of what claims should be raised in the appellate court is left to the sound discretion of appellate counsel, *Jesperson*, 1997 WL 39501, at *2, and "[c]ounsel need not appeal every possible question of law at the risk of being found to be ineffective." *Gustave*, 627 F.2d at 906. Here, Petitioner contends that the State admitted $100,000.00 worth of cocaine, money, and related items at trial and that this evidence was from an unrelated investigation that had no demonstrable connection to Petitioner. (Doc. 9 at 68.) Petitioner argues appellate counsel failed to do an adequate post-trial investigation and was therefore ineffective for failing to challenge the admission of this evidence. This "conclusory suggestion[] . . . fall[s] far short of stating a valid claim of constitutional

---

[16] *See supra* n.15

violation." *Jones*, 66 F.3d at 205.

Petitioner further contends that he was prejudiced because the government cannot connect the evidence from the unrelated investigation to him. (Doc. 38 at 49.) However, Petitioner fails to demonstrate a reasonable probability that if appellate counsel had challenged the State's admission of the cocaine evidence, the outcome of Petitioner's appeal would have been different. *See Wildman v. Johnson*, 261 F.3d 832, 840 (9th Cir. 2001) (appellate counsel's failure to raise issues on direct appeal does not constitute ineffective assistance when appeal would not have provided grounds for reversal).

Accordingly, the state court's finding that Petitioner's claim was without merit is supported by the record before this Court and Petitioner has failed to show that the state court's resolution of this claim was an objectively unreasonable application of *Strickland*. The Court will deny relief on Ground 20(d).

### f.   Ground 20(e)

In Ground 20(e) Petitioner alleges appellate counsel failed to challenge the improper admission of tape recordings of non-defendants' phone calls and the court's denial of a mistrial based on the same. (Doc. 9 at 68.) Petitioner exhausted this claim by presenting it to the trial court and the COA in his first PCR proceedings. (Exs. JJ & LL.)[17]

The state court's finding that Petitioner's claim was without merit is supported by the record before this Court and was not an unreasonable application of *Strickland*. In denying Petitioner's claim, the trial court applied *Strickland* and found that Petitioner failed to show deficient performance, reasoning that "[t]he record does show Defendant's appellate attorney did raise the issues of . . . admission of the tape recordings." (Ex. KK at 4.) The court further found that Petitioner failed to "demonstrate a reasonable probability that but for appellate counsel's deficient performance, the outcome of the appeal would have been different" and thus failed to establish prejudice. (*Id.*) And again, as stated above, the Arizona COA noted that while Petitioner briefly summarized his ineffective assistance of trial and appellate counsel claims on review, he failed to "develop any meaningful

---

[17] *See supra* n.15

1    argument that he was entitled to relief" and therefore failed to establish that the trial court

2    erred in rejecting his IAC claims. (Ex. MM ¶ 7.)

3           Petitioner contends that when testifying officers were allowed to interpret the

4    recorded phone calls of non-defendants, it violated the confrontation clause because trial

5    counsel could not cross-examine the non-defendants. (Doc. 9 at 68.) Petitioner alleges

6    appellate counsel was therefore ineffective for failing to challenge the admission of this

7    evidence and the court's denial of a mistrial based on the same. This "conclusory

8    suggestion[] . . . fall[s] far short of stating a valid claim of constitutional violation." *Jones*,

9    66 F.3d at 205. Further, as the PCR court noted, counsel did argue this issue on appeal,

10   alleging that the trial court abused its discretion when it allowed the officers to interpret

11   the wiretap calls, invading the province of the jury. (Ex. BB at 5.) Appellate counsel noted

12   that trial counsel repeatedly objected to the officers repeating and interpreting what was

13   said in the calls, but counsel's objections were overruled. (*Id.* at 5–6.) Appellate counsel

14   argued that the officers' testimony went beyond explaining coded words or other elements

15   of narcotics investigations and that the officers impermissibly testified to Petitioner's guilt

16   of conspiracy to possess narcotics and possession of narcotics. (*Id.* at 8–9.) Petitioner thus

17   fails to demonstrate how appellate counsel was ineffective for failing to challenge the

18   admission of the phone calls when counsel did in fact argue that the trial court erred in

19   allowing the officers' testimony interpreting the calls. For the same reason, Petitioner

20   cannot show that the outcome of the appeal would have been different and thus cannot

21   show prejudice.[18]

22   —————————————————

23       [18] The appellate court found no error in the admission of officers' testimony on
     interpretation of drug language in the recorded calls, reasoning that the trial court may admit such
24   testimony because it helps the jury understand the evidence, while questions about the accuracy
     and credibility of the testimony and what weight to afford it are matters for the jury to determine.
25   (Ex. EE ¶¶ 21–23.) The court further found that as to the claim that officers impermissibly
     commented on Petitioner's guilt, one agent's statement was in response to a question posed by
26   defense counsel and defense counsel did not object and was thus an "invited error." (*Id.* ¶ 24.) As
     to the other testimony Petitioner alleged constituted improper comments on his guilt, Petitioner
27   did not object to the testimony at trial and the court therefore reviewed for fundamental error. (*Id.*
     ¶ 25.) The court reasoned that it was permissible for officers to summarize the contents of calls,
28   and that while officers should not have expressed their beliefs of Petitioner's guilt, the manner in
     which the statements were made in the context of longer narratives in response to juror questions
     was not prejudicial, fundamental error. (*Id.* ¶¶ 25–30.)

Because the state court's finding that Petitioner's claim was without merit is supported by the state court record and Petitioner has failed to show that the state court's resolution of this claim was an objectively unreasonable application of *Strickland*, the Court will deny relief on Ground 20(e).

## IV.   CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Petitioner's Petition under 28 U.S.C. § 2254 is denied and that this action is dismissed with prejudice. The Clerk shall enter judgment accordingly.

**IT IS FURTHER ORDERED** that no certificate of appealability shall be issued and that Petitioner is not entitled to appeal in forma pauperis because dismissal of the Petition is justified by a plain procedural bar and reasonable jurists would not find the ruling debatable. Further, to the extent Petitioner's claims are rejected on the merits, reasonable jurists would not find the Court's assessment of the constitutional claims to be debatable or wrong.

Dated this 30th day of September, 2021.

Honorable Jennifer G. Zipps
United States District Judge